## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RYAN P. PORTER,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:22cv00021 |
| v. | ) | |
| | ) | **REPORT AND** |
| **MARTIN J. O'MALLEY,** | ) | **RECOMMENDATION** |
| **Commissioner of Social Security,[1]** | ) | |
| Defendant | ) | By:  PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |
| | ) | |

*I. Background and Standard of Review*

Plaintiff, Ryan P. Porter, ("Porter"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Martin J. O'Malley, ("O'Malley"), became the Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rules of Civil Procedure Rule 25(d), O'Malley should, therefore, be substituted for Kilolo Kijakazi as the defendant in this case.  Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g), no further action is required to continue this suit.

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Porter protectively filed his application for DIB on December 10, 2020, alleging disability as of July 6, 2020, based on stenosis in the cervical and lumbar spine; cervical spondylosis with myelopathy; neck surgery; chronic nerve damage at the C6-C7 disc space; neuropathy of his feet and hands; generalized anxiety disorder; obsessive compulsive disorder, ("OCD"); carpal tunnel syndrome; tremors; and vertigo. (Record, ("R."), at 16, 187-88, 217, 248.) The claim was denied initially and upon reconsideration. (R. at 89-108.) Porter then requested a hearing before an administrative law judge, ("ALJ"). (R. at 109-10.) The ALJ held a hearing on February 17, 2022, at which Porter was represented by counsel. (R. at 39-62.)

By decision dated March 2, 2022, the ALJ denied Porter's claim. (R. at 16-33.) The ALJ found that Porter meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2025. (R. at 18.) The ALJ found that Porter had not engaged in substantial gainful activity since July 6, 2020,[2] the alleged onset date. (R. at 18.) The ALJ found that the medical evidence

---

[2] Porter must show that he became disabled between July 6, 2020, his alleged disability onset date, and March 2, 2022, the date of the ALJ's decision to be eligible for benefits.

established that Porter had severe impairments, namely, cervical spine and lumbar spine degenerative disc disease; carpal tunnel syndrome; obesity; major depressive disorder; and generalized anxiety disorder, but he found that Porter did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) The ALJ found that Porter had the residual functional capacity to perform sedentary[3] work, except he could occasionally crouch and perform reaching, handling and fingering, bilaterally; never crawl or climb ladders or scaffolds; and he could concentrate, persist and maintain pace adequate for performing simple, routine (noncomplex) tasks at a Specific Vocational Preparation, ("SVP"), level of 1 to 2.[4] (R. at 22.) The ALJ found that Porter was unable to perform his past relevant work. (R. at 31.) Based on Porter's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Porter could perform, including jobs as a call-out operator and a surveillance system monitor. (R. at 32, 59-60.) Thus, the ALJ concluded that Porter was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 33.) *See* 20 C.F.R. § 404.1520(g) (2022).

---

[3] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2022).

[4] SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job-worker situation. An SVP 1 allows for short demonstration only, and an SVP 2 allows for anything beyond short demonstration, up to and including one month. *See* https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/An%20Explanation%20of%20SVP.pdf (last visited Jan. 5, 2024).

After the ALJ issued his decision, Porter pursued his administrative appeals, (R. at 296-98), but the Appeals Council denied his request for review. (R. at 1-5.) Porter then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2022). This case is before this court on Porter's motion for summary judgment filed March 15, 2023, and the Commissioner's motion for summary judgment filed March 24, 2023.

## II. Facts

Porter was born in 1977, (R. at 32, 187), which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). Porter has a high school education and past relevant work as a heavy equipment operator. (R. at 59, 218.) Porter reported that he fed his children breakfast and helped them get ready for school; he took his son to the library two days a week; he would read to his son; he watched television; he washed dishes and did laundry while taking as many breaks as needed; and he had no problem doing personal care activities. (R. at 238, 255.) He also reported that he attended church weekly, drove his kids to school, drove himself to his doctor's appointments, ran quick errands and socialized with others by phone and/or text. (R. at 55, 241, 737.) Porter stated he used the speaker when talking to others by phone due to difficulty holding the phone. (R. at 58.) He stated he followed written instructions well, followed spoken instructions fairly well, and he got along with authority figures. (R. at 242.) Porter stated he could not handle stress or changes in routine. (R. at 243.)

In rendering his decision, the ALJ reviewed medical records from Louis Perrott, Ph.D., a state agency psychologist; Dr. Bert Spetzler, M.D., a state agency

physician; Eric Oritt, Ph.D., a state agency psychologist; Dr. Jack Hutcheson, Jr., M.D., a state agency physician; Northeast Tennessee Associate Neurology; Wellmont Medical Associates; Mountain View Regional Medical Center; Appalachia Family Health; Melinda M. Fields, Ph.D., a licensed psychologist; and Associated Orthpaedics of Kingsport, P.C.

On August 13, 2020, Porter underwent an anterior cervical diskectomy and fusion, ("ACDF"), at the C5-C6 and C6-C7 discs, but continued to have neck pain, numbness in his arms and both great toes and tingling in his upper and lower extremities. (R. at 299, 345-58, 543-44, 549-64.) Following his ACDF and continuing through January 2022, Porter was treated by several healthcare providers at Wellmont Medical Associates for cervicalgia; bilateral hand tremors; chronic back pain; shoulder pain; bilateral upper and lower extremity pain with numbness and tingling; panic attacks; and OCD. (R. at 314, 318, 323, 325, 332-33, 513, 608-09, 635, 639, 681, 706, 711, 717, 726, 728, 744, 753.) Porter reported that raising his arms above shoulder level, folding towels and sheets, riding his lawnmower and talking on the telephone exacerbated his pain. (R. at 706.)

During this time, examinations showed that Porter was fully oriented; he had a fine continuous tremor of the hand, which changed in intensity depending on position of the arm; he had excellent strength in both legs; his straight leg raising tests were negative; he had tenderness to palpation across the lower back, and his gait was, at times, slow and somewhat antalgic, but, otherwise, was nonantalgic; he had normal range of motion of all extremities; his cervical and lumbar spine had tenderness and limited range of motion; he had normal strength in the upper extremities, except on a couple of occasions, he had decreased grip strength and decreased bicep flexion, bilaterally; he had normal range of motion in all

extremities; he had normal muscle bulk and tone; he had minimal, left-sided sacroiliac, ("SI"), joint tenderness; his motor strength was normal; and his mood, affect, behavior, judgment and thought content were normal. (R. at 315-16, 515, 611, 640, 684, 709, 731-32, 748-49.)

On December 2, 2020, Porter was seen by Dr. Gamal S. Boutros, M.D., a neurosurgeon with Northeast Tennessee Associate Neurology, for tremors in both hands. (R. at 299.) Porter was alert and fully oriented; his facial sensation was symmetric in all three regions, bilaterally; his infraspinatus muscle and triceps exhibited weakness; he had weakness of extension of the wrist and fingers; he had normal strength, bilaterally; he had no abnormal movements; he had full range of motion of the cervical and lumbar spine, shoulders, knees, wrists, hips and ankles; he had no point tenderness or trigger points; his deep tendon reflexes were equal, bilaterally; he had decreased median nerve distribution in the toes and decreased sensory at the right C6-C7 distribution; he had no dysmetria, ataxia or intention tremors; he was able to walk on his tiptoes and heels and stand on one foot; he had a negative Romberg test; and essential tremors were noted. (R. at 300.) A nerve conduction study showed carpal tunnel syndrome on the right and mild sensory neuropathy in both feet. (R. at 304.) An electromyography, ("EMG"), of Porter's right upper extremity showed evidence of acute/chronic denervation in the right C6-C7 distribution. (R. at 304.) Dr. Boutros diagnosed paresthesia of the skin; sensory neuropathy; carpal tunnel syndrome; and cervical radiculopathy. (R. at 300.)

On December 16, 2020, Porter saw Dr. Christopher M. Joachim, D.O., a physician with Wellmont Medical Associates, asking that he complete paperwork related to his ability to work. (R. at 314.) Porter reported he took Prozac for

generalized anxiety disorder, but he experienced breakthrough panic attacks a couple of times a week, which lasted for hours at a time. (R. at 314.) Dr. Joachim reported that Porter was nervous/anxious. (R. at 315.) In addition to Porter's examination findings previously noted, Porter had bilateral acromioclavicular, ("AC"), joint pain. (R. at 315-16.) Dr. Joachim diagnosed GERD; low back pain radiating to the left leg; anxiety; cervical stenosis of the spinal canal; cervical spondylosis with myelopathy; and OCD. (R. at 316.)

On December 17, 2020, Dr. Joachim completed a mental assessment, finding Porter had no or minimal limitations in his ability to understand, remember and carry out simple, detailed and complex job instructions; to maintain personal appearance; and to demonstrate reliability. (R. at 688-90.) He opined Porter had mild limitations in his ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to maintain attention and concentration; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 688-89.) Dr. Joachim opined Porter had a satisfactory ability to follow work rules; he had marked limitations, resulting in an unsatisfactory work performance, in his ability to deal with work stresses; and he had no useful ability to function independently. (R. at 688.) He found Porter would be absent from work more than two days a month. (R. at 690.) Dr. Joachim based his findings on Porter's generalized anxiety with panic attacks, which was exacerbated and complicated by neck pain and bilateral upper extremity weakness, numbness and pain with movements. (R. at 689.)

That same day, Dr. Joachim completed a medical assessment, finding Porter could occasionally lift items weighing up to 15 pounds and 10 pounds frequently; sit, stand and/or walk a total of two hours each in an eight-hour workday and up to

30 minutes without interruption; occasionally kneel and balance and never climb, stoop, crouch and crawl; his abilities to reach, to handle, to feel and to push/pull were limited; and he was restricted from working around heights and moving machinery. (R. at 691-93.) Dr. Joachim based his findings on Porter's weakened grip strength; bilateral upper extremity pain; numbness and neuropathic symptoms; severe neck pain; muscle weakness; loss of sensation with repeated movement, rendering fine motor skills unsustainable for longer than a few moments. (R. at 691-93.)

On December 30, 2020, an MRI of Porter's cervical spine showed some degenerative changes above his fusion at the C3-C4 and C4-C5 discs, and an MRI of Porter's thoracic spine showed mild degenerative changes in the thoracolumbar junction. (R. at 516-19.)

On January 21, 2021, Dr. Kyle A. Ward, D.O., a physician with Wellmont Medical Associates, completed a medical assessment, finding Porter could occasionally lift items weighing up to 16 pounds and eight pounds frequently; stand and/or walk a total of one hour in an eight-hour workday and up to 15 minutes without interruption; sit a total of six hours in an eight-hour workday and up to one hour without interruption; frequently balance; occasionally climb and kneel; never stoop, crouch and crawl; and his abilities to reach, to handle, to feel and to push/pull were limited. (R. at 755-57.) Dr. Ward based his findings on Porter's ACDF; CT evidence of degenerative changes; an MRI showing L4-L5 and L5-S1 disc space narrowing with disc protrusion; degenerative disc disease at the L4-L5 and L5-S1 levels; decreased hand sensation and grip strength; CT and MRI evidence of nerve entrapment; bilateral carpal tunnel syndrome; chronic

radiculopathy at the C6-C7; and decreased dexterity in his fingers and hands due to numbness. (R. at 755-57.)

From February 2021 through January 2022, Porter saw Crystal Burke, L.C.S.W., a licensed clinical social worker with Appalachia Family Health, reporting anxiety, depression and OCD. (R. at 589.) He stated he managed his symptoms for years with medications and his own coping skills, but due to stress related to his health and being out of work, he was having difficulty coping. (R. at 589.) Porter reported financial, family and marital stressors. (R. at 662, 666, 765, 768.) He stated that gabapentin helped with his pain, and he was walking for exercise several times a week. (R. at 662.) During this time, Porter's mood was depressed and anxious with a congruent affect; he had appropriate eye contact; he was fully oriented; his thought process was intact; he exhibited no paranoia or delusions; his judgment and insight were good; and he had no suicidal or homicidal ideations. (R. at 591, 595, 664, 668, 768, 771, 774.) In the latter part of 2021, Porter reported increased anxiety and depression due to pain and stated that he was not able to perform his usual tasks around the house. (R. at 768, 771, 774.) Burke diagnosed major depressive disorder, recurrent, severe, without psychotic features; generalized anxiety disorder; and OCD. (R. at 590.)

On March 18, 2021, Louis Perrott, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Porter's depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders were not severe. (R. at 67.) Perrott opined Porter had no limitations on his ability to understand, remember or apply information and to adapt or manage himself and mild limitations on his ability to interact with others and to concentrate, persist or maintain pace. (R. at 67) He noted Porter had been

diagnosed with depression and anxiety, but had no history of psychiatric hospitalizations or recent referral for outpatient mental counseling. (R. at 67.) Perrott noted that Porter's recent examinations showed him as alert and oriented with normal mood and affect. (R. at 67.)

On March 19, 2021, Dr. Bert Spetzler, M.D., a state agency physician, completed a medical assessment, finding Porter could perform light[5] work. (R. at 68-71.) He found Porter could stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; frequently push and pull with his right upper extremity; frequently climb ramps and stairs, balance, stoop, kneel and crouch; occasionally climb ladders, ropes or scaffolds and crawl; and he would need to avoid concentrated exposure to extreme cold, vibration and hazards, such as machinery and heights. (R. at 68-69.) Dr. Spetzler based his findings on Porter's recent examinations showing he had a nonantalgic and nonspastic gait; decreased range of motion with pain in his cervical spine; good strength in both arms; reports of radicular pain and tremors; and mild peripheral neuropathy. (R. at 68-69.) On September 24, 2021, Dr. Jack Hutcheson, Jr., M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. Spetzler. (R. at 78-79.)

On July 12, 2021, Burke completed a mental assessment, finding Porter had mild limitations in his ability to maintain personal appearance and a satisfactory ability to follow work rules; to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to function independently; to

---

[5] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2022).

maintain attention and concentration; to understand, remember and carry out simple, detailed and complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 678-80.) She opined Porter had marked limitations, resulting in an unsatisfactory work performance, in his ability to deal with work stresses. (R. at 678.) She found Porter would be absent from work more than two days a month. (R. at 680.)

On July 15, 2021, Porter saw Dr. Sarah A. Knuettel, D.O., a physician with Wellmont Medical Associates, requesting assistance with weight loss. (R. at 717.) He reported his anxiety and depression were improved with medication. (R. at 718.) Porter's musculoskeletal system and cervical back had no tenderness and normal range of motion; he was fully oriented; and his behavior and thought content were normal. (R. at 720.) Dr. Knuettel diagnosed class 2 obesity without serious comorbidity with body mass index, ("BMI"), of 38.0 to 38.9; unspecified obesity type; and benign hypertension. (R. at 721.) Porter was prescribed medication to assist with weight loss. (R. at 721.) On July 20, 2021, Porter saw Dr. Ward, reporting arm pain, right greater than left. (R. at 681.) Dr. Ward reported that Porter was nervous and anxious. (R. at 682.) Porter had normal strength in the upper extremities, but limited range of motion of the cervical spine in all directions, including forward flexion, extension and rotation. (R. at 684.) X-rays of Porter's cervical spine showed solid interbody fusions at the C5-C6 and C6-C7 discs. (R. at 684.) Dr. Ward diagnosed cervicalgia and chronic cervical radiculopathy. (R. at 684.) Dr. Ward discussed the possibility of a spinal cord stimulator for treatment of Porter's chronic radiculopathies, but Porter did not have insurance coverage. (R. at 684.)

On September 2, 2021, Eric Oritt, Ph.D., a state agency psychologist, completed a PRTF, finding Porter's depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders were not severe. (R. at 76-77.) Oritt opined Porter had no limitations on his ability to understand, remember or apply information and to adapt or manage himself; mild limitations on his ability to interact with others; and moderate limitations on his ability to concentrate, persist or maintain pace. (R. at 76.)

That same day, Oritt completed a mental assessment, finding Porter had moderate[6] limitations in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 80-81.) Oritt stated Porter's work-related mental abilities were, otherwise, not significantly limited. (R. at 80-81.) Oritt opined that Porter could carry out very short and simple instructions; perform activities within a schedule; sustain an ordinary routine without special supervision; work in coordination with others without being distracted by them; and make simple work-relate decisions. (R. at 80.) Oritt opined Porter could perform simple, routine work. (R. at 80.) He based his findings on Porter's depression, anxiety and OCD. (R. at 80.) He noted Porter had been diagnosed with depression and anxiety, but had no history of psychiatric hospitalizations; his report that he does not like being in crowds; that he did not need reminders to go places; and that he could follow

---

[6] The regulations define "moderate limitations" as an individual's ability to function independently, appropriately, effectively and on a sustained basis as fair. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2022).

written instructions well and spoken instructions fairly well. (R. at 80.) Based on this, Oritt concluded that Porter could perform simple, routine work. (R. at 80.)

On November 19, 2021, an MRI of Porter's lumbar spine showed small chronic disc protrusions at the L4-L5 and L5-S1 discs. (R. at 703.) That same day, a CT scan of Porter's cervical spine showed minimal degenerative changes at the C4-C5 level and mild foraminal narrowing at the C6-C7 level. (R. at 704.)

On December 14, 2021, Porter saw Serena E. Blevins, N.P., a nurse practitioner with Wellmont Medical Associates, reporting neck and back pain. (R. at 744.) Porter reported he could care for himself; perform household chores; shop; and he walked for exercise. (R. at 746.) Porter's cervical back exhibited spasms, tenderness and decreased range of motion; his lumbar back exhibited tenderness and spasms; his straight leg raising tests were negative; he had normal muscle strength; he had multiple taut bands palpated in his neck, shoulders and upper back with associated jump signs;[7] he had positive Tinel's sign in both hands; his gait was normal; and his mood, affect, behavior, thought content and judgment were normal. (R. at 748-49.) Blevins diagnosed chronic midline low back pain with left-sided sciatica;[8] bilateral carpal tunnel syndrome;[9] myofascial muscle pain; muscle

---

[7] Trigger points are typically taut bands of muscle fibers and are "ropy" and sensitive to pressure when compressed. They can create a local twitch response or "jump sign," which is due to involuntary contraction of muscle fibers. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1769463/ (last visited Jan. 8, 2024).

[8] Blevins noted Porter's recent MRI of his lumbar spine showed facet arthropathy and disc protrusion with annular fissure at the L4-L5 level, resulting in mild central and bilateral foraminal stenosis; and a small disc protrusion at the L4-S1 level, which did not result in narrowing. (R. at 750.)

[9] Blevins noted Porter's EMG and nerve conduction studies showed evidence of mild carpal tunnel syndrome, bilaterally, and chronic C6-C7 radiculopathy on the right. (R. at 750.) Bilateral wrist splints were provided to Porter. (R. at 750, 758-62.)

spasms;[10] lumbar radiculitis; cervicalgia; arthropathy of the lumbar facet joint;[11] and degeneration of the lumbar intervertebral disc. (R. at 750-51.) Blevins ordered trigger point injections[12] for Porter's myofascial muscle pain and a lumbar epidural steroid injection[13] for his lumbar radiculitis. (R. at 750-51.)

On January 6, 2022, Porter saw Burke, reporting increased depression and anxiety, as he was not able to perform his usual tasks around the house and do things with his family. (R. at 765.) He stated muscle relaxers improved his sleep, and a spine injection helped with his lower extremities. (R. at 765.) Porter's examination findings remained unchanged. (R. at 765.) That same day, Burke completed a mental assessment, finding Porter had marked limitations, resulting in an unsatisfactory work performance, in his ability to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out detailed and complex job instructions. (R. at 694-96.) Otherwise, she found Porter had a satisfactory ability to make occupational, performance and personal/social adjustments. (R. at 694-95.) Burke found Porter would be absent from work more than two days a month. (R. at 696.)

On January 11, 2022, Porter saw Travis L. Patton, P.A., a physician's assistant with Wellmont Medical Associates, reporting his low back and left lateral

---

[10] Despite Porter reporting modest benefit from his recent trial of Robaxin, he was provided with Baclofen in lieu of Robaxin. (R. at 750.)

[11] Blevins noted a medial branch block may be considered in the future to address Porter's arthropathy of the lumbar facet joint. (R. at 751.)

[12] On January 12, 2022, Porter received trigger point injections. (R. at 751-52.)

[13] On January 4, 2022, Porter had a lumbar epidural steroid injection. (R. at 778-79.)

thigh pain improved following a lumbar epidural steroid injection. (R. at 711.) Porter had a nonantalgic and nonspastic gait; he had normal active range of motion in all extremities; his cervical spine range of motion was intact; he had a positive Tinel's sign at the right elbow; he had equal range of motion of the shoulders and wrists; he had symmetrical reflexes in the bilateral upper and lower extremities; his lumbar spine had no tenderness to palpation and good range of motion; his straight leg raising tests were negative; he had full motor strength; and he was fully oriented. (R. at 713.)

On January 19, 2022, Melinda M. Fields, Ph.D., a licensed psychologist, evaluated Porter at the request of Disability Determination Services. (R. at 734-40.) Porter's hygiene and grooming appeared good; he was pleasant and cooperative; he had adequate eye contact; he was fully oriented; his mood was anxious, and he displayed shaking and pressured speech; he was depressed, as evidenced by facial expressions; his stream of thought was organized and logical; he exhibited no evidence of a thought content impairment or perceptual disturbances; his judgment was adequate, as evidenced by responses to presented scenarios; his immediate memory was adequate; his recent recall was impaired, as he could recall only one of four words after a delay; his concentration was impaired, as evidenced by serial seven performance; and his pace and gait were normal, but his posture was stiff. (R. at 737-38.) The Beck Depression Inventory, ("BDI"), and the Beck Anxiety Inventory, ("BAI"), were indicative of severe depressive and significant anxiety-related symptomatology. (R. at 738-39.) Fields diagnosed OCD; generalized anxiety disorder; panic disorder; and major depressive disorder, recurrent, severe without psychotic features. (R. at 739.)

That same day, Fields completed a mental assessment, finding Porter had no limitations in his ability to maintain appearance and a satisfactory ability to follow work rules; to use judgment in public; to understand, remember and carry out simple job instructions; and to demonstrate reliability. (R. at 741-43.) She opined Porter had marked limitations, resulting in an unsatisfactory work performance, in his ability to make all other occupational, performance and personal/social adjustments. (R. at 741-42.) She found Porter would be absent from work more than two days a month. (R. at 743.) Fields based these findings on Porter's impaired concentration and recent and remote recall; panic attacks; OCD; impaired social functioning; and depression. (R. at 742-43.)

On January 27, 2022, Porter saw Kyle J. Morgan, PA-C, a certified physician's assistant with Associated Orthopaedics of Kingsport, P.C., for bilateral hand pain, numbness and weakness and tremors in his left hand. (R. at 753.) Porter was neurovascularly intact, except for mild paresthesias in the median nerve distribution, primarily at the thumb and index finger; Tinel's sign was negative, but he had some pain with Phalen's test; and his grip strength was diminished, but equal at 4+/5, bilaterally. (R. at 753.) Morgan diagnosed acute carpal tunnel syndrome of the right wrist and recommended carpal tunnel release surgery. (R. at 753.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2022). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a

severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2022).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Porter filed his application in December 2020; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions here.[14] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources. 20 C.F.R. § 404.1520c(a) (2022). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 404.1520c(b), (c)(1)-(5) (2022) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2022).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at

---

[14] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

5853; *see also* 20 C.F.R. § 404.1520c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements.[15] *See* 20 C.F.R. § 404.1520c(b)(2).

Porter argues the ALJ erred by improperly determining his residual functional capacity by rejecting the opinions of Dr. Joachim, Dr. Ward, Burke and Fields. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-9.)

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. § 404.1545(a) (2022). The ALJ found that Porter had the residual functional capacity to perform sedentary work, except he could occasionally crouch and perform reaching, handling and fingering, bilaterally; never crawl or climb ladders or scaffolds; and concentrate, persist and maintain pace adequate for performing simple, routine tasks at an SVP level of 1 to 2. (R. at 22.)

In making this residual functional capacity, the ALJ found Dr. Joachim's December 2020 opinion and Dr. Ward's January 2022 opinion partially persuasive, insofar as they considered Porter's surgical history; abnormalities seen in imaging studies; physical examinations showing decreased grip strength and sensation; an

---

[15] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(3) (2022).

EMG showing carpal tunnel syndrome and radiculopathy; and subjective complaints. (R. at 29.) The ALJ explained that such opinions were not fully persuasive, as they were "not entirely supported or consistent with other evidence," including the providers' own findings and treatment recommendations, as well as other record evidence. (R. at 29.)

Specifically, the ALJ discussed Porter's surgery, radiological reports and treatment notes earlier in his decision. (R. at 24-27.) He explained that, in December 2020, during a visit with another provider at Wellmont Medical Associates, Porter's gait was noted to be slow and somewhat antalgic; he had one beat of nonsustained clonus, bilaterally, but his lumbar spine had no tenderness to palpation and good range of motion; he had no SI joint tenderness; and he had normal muscle bulk and tone. (R. at 26, 320-21.) In May 2021, Porter exhibited decreased range of motion and tenderness of the cervical and lumbar spine, but normal strength, no atrophy, tremor or sensory deficits, and he had normal muscle tone. (R. at 26, 640.) In June 2021, Dr. Joachim did not note significant musculoskeletal abnormalities when examining Porter. (R. at 29, 636.) Porter subsequently received injections with significant improvement in his back and left lower extremity. (R. at 26, 711.)

The ALJ also explained that, although Porter had weak grip strength at times and was recently offered carpal tunnel release surgery, the electrodiagnostic findings were interpreted to show only mild carpal tunnel syndrome, and he noted that the objective findings pertaining to Porter's hands were "somewhat mixed." (R. at 29.) For example, during a visit with Dr. Joachim in May 2021, Porter had normal strength and displayed no atrophy, tremor or sensory deficit. (R. at 29, 640.) In December 2021, Porter had 5/5 strength in his bilateral deltoid, biceps,

triceps, wrists and interossei muscles. (R. at 29, 749.) In more recent encounters, Porter had normal muscle bulk and tone, grossly intact sensation in his upper and lower extremities and 5/5 strength throughout, including grip. (R. at 29, 709.) In January 2022, Porter had positive Tinel's sign, but equal range of motion of the shoulders and wrists, as well as good intrinsic and symmetrical reflexes in the bilateral upper extremities and 5/5 strength throughout, including grip. (R. at 29, 713.) In addition, Porter reported that gabapentin and a lumbar epidural steroid injection helped with his pain, and he was walking for exercise several times a week. (R. at 662, 711.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ considered the findings of the state agency physicians, who found Porter could perform a range of light work, and concluded their opinions were partially persuasive, but to Porter's benefit, the ALJ limited him to a reduced range of sedentary work with occasional reaching, handling and fingering. (R. at 28.)

The ALJ also stated he found the mental assessments completed by Dr. Joachim, Dr. Ward, Burke and Fields unpersuasive, as they were unsupported by and inconsistent with the other evidence of record. (R. at 30-31.) The ALJ noted that Drs. Joachim and Ward found that Porter had a "marked" limitation in dealing with work stresses and an "extreme" limitation in functioning independently. (R. at 30.) However, the ALJ noted that the record shows that Porter's mental status remained fairly intact despite his symptoms. (R. at 30.) For example, Porter had normal behavior, judgment and thought content, even when complaining of mental health symptoms. (R. at 30-31.) In addition, Porter reported "good results" from

taking Prozac. (R. at 31.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross,* 785 F.2d at 1166.

The ALJ found that Burke's assessments were unsupported by and inconsistent with the other evidence, as well as her own objective findings and conservative treatment. (R. at 30.) Apart from Porter's mood, Burke typically documented normal findings with respect to his observed mental status. (R. at 30.) The ALJ explained that Burke consistently noted that Porter had a clean and neat appearance and grooming, congruent affect, appropriate eye contact, intact orientation and thought processing, fair or better judgment and insight and no suicidal or homicidal ideation. (R. at 27.) The ALJ also noted that Burke did not recommend more serious interventions, such as inpatient treatment or going to the emergency room for acute symptoms. (R. at 30.) Instead, Porter was to follow up every four to six weeks. (R. at 30, 764, 773.)

The ALJ found Fields's assessment was unsupported by her own findings and inconsistent with the other evidence of record. (R. at 31.) The ALJ noted that Fields's own observations of Porter during the psychological evaluation offered little to no support for the disabling limitations proposed. (R. at 31.) The ALJ noted that, although Porter appeared to have some difficulty with recall and concentration, he was, otherwise, well-groomed, pleasant and cooperative. (R. at 31.) He further noted that, despite Porter's depressed and anxious mood, his stream of thought appeared organized and logical, and there was no evidence of a thought content impairment or perceptual disturbance. (R. at 31.) Porter's judgment was adequate, and he performed reasonably well on a test of his academic skills. (R. at 31, 738.) Thus, the ALJ found Fields's opinion unpersuasive. (R. at 31.)

The ALJ stated he found the opinions of the state agency psychologists partially persuasive, in that they aptly considered the then-available evidence concerning Porter's activities of daily living, medical treatment and observed mental status. (R. at 30.) The ALJ found that Oritt's opinion that Porter had a moderate limitation in concentrating, persisting and maintaining pace was consistent with the other evidence, including Porter's reports of poor sleep and his impaired concentration during Fields's psychological evaluation. (R. at 30.) However, the ALJ noted the state agency consultants' opinions were only partially consistent with the other evidence because slightly different limitations were warranted based on the totality of the evidence. (R. at 30.) The ALJ noted that the psychological consultants did not have the benefit of reviewing all the relevant evidence, which described Porter as having appropriate interactions with clinicians, and without obvious abnormalities in eye contact, speech and overall behavior. (R. at 20, 30.) Thus, the ALJ found that Porter was not limited in interacting with others, but was mildly limited in adapting and managing himself. (R. at 30.)

While Porter complained of stressors and stated that he could not handle stress, the ALJ found he could perform simple, routine tasks. (R. at 22.) The ALJ noted that Porter's observed mental status had remained fairly stable, overall, without inpatient treatment or similarly intensive psychiatric interventions. (R. at 21.) As noted by the ALJ, the evidence shows that Porter's symptoms improved with treatment, and he testified that he continued to drive, attend church, take his children to school, do quick errands and attend doctor's appointments. (R. at 21.) The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a) (2022); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) ("[P]erforming a 'simple routine task' typically involves low stress level

work that does not require maintaining sustained concentration."). Unskilled work generally is low stress and involves remembering only very short and simple instructions in a routine environment in which "concentration is not critical." Program Operations Manual System, ("POMS"), DI 25020.010(B)(3), available at https://policy.ssa.gov/poms.nsf/lnx/0425020010 (effective Apr. 5, 2007) (explaining that unskilled work involves "remember[ing] very short and simple instructions," and that "concentration is not critical").

Based on the above, I find that substantial evidence exists to support the ALJ's consideration of the evidence and his residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's residual functional capacity; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Porter was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Porter's motion for summary judgment; grant the Commissioner's motion for summary judgment; and affirm the Commissioners decision denying benefits.

## __Notice to Parties__

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     January 9, 2024.

s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE